UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                                        Case No.: 1-06-41178-dem

ALLEN K. CORBIN,                                              Chapter 7

                Debtor.
--------------------------------------------------------------x
MARC A. PERGAMENT, TRUSTEE OF THE                             Adversary Proceeding
ESTATE OF ALLEN K. CORBIN,
                                                                           Case No.: 1-06-01255-dem

                Plaintiff,

                    v.

ROGER CORBIN and REGINA CORBIN,

                Defendants.
--------------------------------------------------------------x

## DECISION AND ORDER AFTER TRIAL

Appearances:

Marc A. Pergament, Esq.
Weinberg, Gross & Pergament, LLP
Attorneys for Plaintiff-Trustee
400 Garden City Plaza
Garden City, New York 11530

Roy J. Lester, Esq.
Lester & Weitz, P.C.
Attorneys for Defendants
600 Garden City Plaza
Garden City, New York 11530

DENNIS E. MILTON
United States Bankruptcy Judge

On August 3, 2004, Allen K. Corbin (the "debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The case was assigned to Chief Judge Melanie L. Cyganowski. On September 24, 2004, Marc A. Pergament, the Chapter 7 Trustee (the "trustee") commenced an adversary proceeding against the defendant Roger Corbin. On April 4, 2005, the Court issued an Order granting the trustee's motion to amend the complaint and add Regina Corbin, the wife of Roger Corbin, as a defendant.

In the adversary proceeding, the trustee alleged that the debtor conveyed his interest in the Property to the defendant Roger Corbin for less than fair consideration and that the debtor was insolvent or made insolvent at the time of the transfers. The trustee further alleged that the debtor actually intended to defraud his creditors when he conveyed his interest in the Property. In addition, the trustee claimed that the transfers constituted a fraudulent conveyance under New York Debtor and Creditor Law ("DCL") §§ 273, 275 and 276. The trustee further claimed that he could avoid the transfers under DCL Section 278 and Section 544(b) of the Bankruptcy Code and recover the net value of the allegedly fraudulently conveyed property pursuant to Section 550(a) of the Bankruptcy Code.

The debtor's conduct with regard to real property located at 727 Franklin Street, Westbury, New York (the "Property") played a central role in the allegations of this proceeding. The Property was the subject of a number of transactions. In 1979, the defendants Roger Corbin and Regina Corbin purchased the Property. On September 21, 1999, the debtor purchased the Property at a foreclosure sale. On March 11, 2002, the debtor transferred a one percent (1%)

interest in the Property to the defendant Roger Corbin. On May 10, 2002, the debtor transferred his remaining (99%) interest in the Property to the defendant Roger Corbin.

On April 20, 2006, the Court (Cyganowski, C.J.) entered an Order transferring the adversary proceeding to United States Bankruptcy Judge Dennis E. Milton. On September 18, 2006, the Court held a trial on the matter and fixed the schedule for the filing of post trial submissions. On November 29, 2006, upon the receipt of the post trial submissions, the Court took the matter under advisement.

The Court finds that the defendant Roger Corbin provided fair consideration to the debtor for the transfers and that the transfers occurred at a time when the debtor was solvent. The Court further finds that the debtor transferred his interest in the Property without intent to defraud his creditors. Accordingly, the trustee may not avoid the transfers as fraudulent conveyances.

## JURISDICTION

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§1334(b) and 157(b)(2)(c) and the Eastern District of New York standing order of reference dated August 28, 1986. This Decision and Order constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

## PROCEDURAL HISTORY

On August 3, 2004, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On September 24, 2004, the trustee commenced an adversary proceeding against the defendant Roger Corbin.

On March 18, 2005, the trustee filed a motion to amend the complaint to join Regina Corbin as a party defendant and to allege additional claims against both defendants. Specifically, the Amended Complaint sought to avoid the transfers as alleged fraudulent conveyances pursuant to DCL Sections 270 et seq. The trustee contended that the debtor transferred the Property while his liabilities exceeded his assets and he was insolvent. The trustee also claimed that the debtor had transferred the Property for little or no consideration, in an attempt to avoid repayment of creditors, and intended to incur debts beyond his ability to repay them. The trustee further alleged that the debtor transferred the Property with the actual intent to hinder, delay or defraud his present or future creditors. On April 4, 2005, the Court issued an Order granting the trustee's motion to amend the complaint.

On May 5, 2005, Regina and Roger Corbin (collectively the "defendants") filed an Answer to the Amended Complaint denying the allegations. The defendants argued that while at all times the debtor held legal title to the Property, they retained the beneficial and equitable ownership of the Property. The defendants further argued that they had provided fair consideration for the Property and that the debtor had transferred the Property to fulfill a promise assumed years before and not to defraud his creditors.

On September 18, 2006, the Court conducted the trial on the adversary complaint.

On October 23, 2006, the trustee filed a Post-Trial Memorandum of Law which limited the relief he sought to the claims against the defendant Roger Corbin. On November 14, 2006, counsel for defendant Roger Corbin filed a Post-Trial Counter Memorandum of Law (the "Defendant's

Submission"). On November 29, 2006, the trustee filed his reply to the Defendant's Submission. The Court took the matter under advisement and reserved decision.

## FACTUAL BACKGROUND

In 1979, the defendants Roger Corbin and Regina Corbin purchased the Property with each owning a one-half undivided interest. Joint Pre-Trial Statement ("PTS") at 1. They continue to reside at the Property. Id. at 1. In 1999, the defendant Roger Corbin experienced financial difficulties and the Property went into foreclosure. The defendant Roger Corbin and the debtor entered into an agreement whereby the debtor would purchase the Property and the defendant Roger Corbin would continue to occupy the Property and pay the mortgage, insurance and repairs costs until he was able to purchase the Property from the debtor. Tr. at 30, 33, 70-71, 108.[1]

On or about August 10, 1999, the debtor attended the foreclosure sale of the Property and was the winning bidder. Id. at 28. The debtor made the required down payment in the sum of $16,800.00; the defendant Roger Corbin provided these funds to the debtor. Id. at 29. On or about September 21, 1999, the sale closed. PTS at 2. To fund the purchase, the debtor took out a mortgage with First Funding Mortgage Bankers, in the sum of $166,500.00, which was subsequently assigned to Chase Manhattan Mortgage ("Chase Mortgage"). Id. In addition to providing the debtor with the down payment, the defendant Roger Corbin paid the debtor $2,370.00 each month to meet the mortgage payments. Tr. at 30-31. Both the debtor and the defendant Roger Corbin testified that the debtor did not use any of his personal funds to purchase the Property. Id. at 29-31. The trustee introduced no evidence to the contrary.

---

[1] References preceded by "Tr." are to the transcript of the trial held on September 18, 2006.

On March 11, 2002, the debtor transferred a one percent (1%) interest in the Property to the defendant Roger Corbin for no consideration ("Transfer I"). PTS at 2. From March 11, 2002 through May 10, 2002, the deed to the Property listed the debtor and the defendant Roger Corbin as tenants in common. Id. On May 10, 2002, the debtor transferred his remaining ninety-nine per cent (99%) interest in the Property to the defendant Roger Corbin. ("Transfer II"). Id. The defendant Roger Corbin took out a mortgage on the Property from Alliance Mortgage Banking Corp. ("Alliance") in the amount of $237,510.00. PTS at 3. At the closing, the Chase Mortgage was fully satisfied. The defendant Roger Corbin paid the debtor $16,700.00 from the Alliance Mortgage proceeds to repay him for using his credit to purchase the Property. Tr. at 37-39 and 73-74.

As of May 2002, the debtor had assets consisting of $9,327.80 in the bank and other personal property. Tr. at 32, Ex. 31.[2] At that time, the defendant Roger Corbin gave the debtor $16,700.00. Tr. at 73-74; Plaintiff's Post Trial Memorandum of Law at 4; Defendant's Submission at 3. Thus, on or about the date of Transfer II, the debtor had total assets of at least $25,937.80. With respect to liabilities, the evidence introduced at trial reflected that as of May 2002 the debtor's liabilities totaled $21,935.34. Tr. at 46; Exs. 34 through 37 and Ex. 39. Specifically, the debtor's liabilities consisted of: (1) $6,130.38 to First USA Bank (Ex. 34); (2) $368 to Household Finance (Ex. 35); (3) $4,839.66 to Discover Bank (Ex. 36); (4)$7,763.86 to Citi Platinum (Ex. 37) and (5) $2,833.44 to HSBC Bank (Ex. 39). Tr. at 46.

The debtor testified that in May 2002 his assets exceeded his liabilities and that his credit was "excellent." See Tr. at 40, 46. He also testified that at that time he was worried

---

[2] References preceded by "Ex." are to the exhibits introduced into evidence at the trial of the adversary proceeding on September 18, 2006.

that he might lose his job at Cablevision due to economic cutbacks. See id. at 31. This apprehension proved unwarranted, as the debtor was still employed at Cablevision in 2004 when he filed his chapter 7 petition.

On September 23, 2003, the defendant Roger Corbin transferred his interest in the Property to himself and his wife as joint tenants. PTS at 3. The defendants Roger and Regina Corbin took out a mortgage on the Property from Alliance in the amount of $284,960.00. Id.

With regard to establishing the value of the Property, Arleen Goscinski testified on behalf of the plaintiff. She concluded that the Property had a value as of May 11, 2002 of $375,000. Id. at 12. She based her testimony upon her August 2005 appraisal which indicated that the size of the Property was approximately 2,683 square feet and that the Property had eight rooms. Tr. at 19. Ms. Goscinski acknowledged that in preparing her appraisal she had not conducted an interior inspection or measured the Property. In opposition, counsel for the defendants submitted a Statement of Appraised Value filed with the U.S. Department of Housing and Urban Development. Ex.10. This Statement listed the Property as of April 2002 as measuring 2,216 square feet and having a value of $355,000. Id. In addition, other publicly available information described the Property as having five, not eight, rooms. Tr. at 19.

## DISCUSSION

In the Amended Complaint, the trustee sought to avoid Transfers I and II as allegedly fraudulent conveyances. The trustee contended that the debtor transferred the Property while his liabilities exceeded his assets and he was insolvent. The trustee also claimed that the debtor had transferred the Property for little or no consideration, in an attempt to avoid repayment of creditors, and intended to incur debts beyond his ability to repay them. The

trustee further alleged that the debtor transferred the Property with the actual intent to hinder, delay or defraud his present or future creditors.

### A.  Standard for Avoidance of Transfer

Section 544(b)(1) of the Bankruptcy Code provides in pertinent part that the trustee "may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding a secured claim ..."  11 U.S.C. §544(b)(1).  The burden is on the trustee to demonstrate the existence of an actual creditor with a viable cause of action against the debtor.  In re Borriello, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005);  In re Le Café Creme, Ltd., 244 B.R. 221, 238 (Bankr. S.D.N.Y. 2000); In re 9281 Shore Road Owners Corp., 187 B.R. 837, 851 (E.D.N.Y. 1995).  Courts have recognized that the main purpose of Section 544(b) "'is to undo pre-petition transfers of property that remove or withhold that property from the estate to the prejudice of creditors.'"  In re Le Café Creme, Ltd., 244 B.R. at 238 quoting SIPC v. Stratton Oakmont, Inc., 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999).  Section 544 contains no substantive provisions to determine when a prepetition transfer is voidable; instead it incorporates and makes applicable New York State law provisions set forth in DCL §§ 273, 275 and 276.

DCL Sections 273 and 275 govern the trustee's first and second claims for relief in the Amended Complaint.   Under DCL Section 273, the trustee may set aside the transfer as a fraudulent conveyance if he can demonstrate that a person provided less than fair consideration for the transfer and that the debtor was insolvent or rendered insolvent at the time of the transfer

to that person.[3]   In addition, the trustee may have a transfer set aside as a fraudulent conveyance upon a showing that (1) the transferee provided less than fair consideration for the transfer and (2) the transferor intended to, or believed that he would, incur debts beyond his ability to pay them as they matured.  DCL §275.[4]  In re Borriello, 329 B.R. at 373; In re American Petroleum Corp. 259 B.R. 6, 17 (Bankr. E.D.N.Y. 2001).[5]

### B.  Application of the Standard

To prevail on his claims under DCL Sections 273 or 275, the trustee has the burden to demonstrate that the debtor did not receive fair consideration for the challenged

---

[3] New York Debtor and Creditor Law Section 273 provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

DCL §273 (McKinney 2001).

[4] New York Debtor and Creditor Law Section 275 provides:

> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

DCL §275 (McKinney 2001)

[5]  If the conveyance is a fraudulent conveyance under either DCL Section 273 or DCL Section 275, a creditor may have the conveyance set aside to the extent necessary to satisfy the claim. DCL §278.  New York Debtor and Creditor Law Section 278(1)(a) provides in pertinent part that

> [w]here a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase
> ...
> (a)[h]ave the conveyance set aside or the obligation annulled to the extent necessary to satisfy his claim.

transfers. DCL Section 272 provides that fair consideration for property is given:

> (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

> (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value or the property, or obligation obtained.

Thus, the trustee must prove that the debtor did not receive a fair equivalent for the transfer of the Property and that the transferee acted in bad faith.[6] A fair equivalent does not require dollar-for-dollar equivalence. In re Cambridge Capital, LLC, 331 B.R. 47, 63 (Bankr.E.D.N.Y.2005). Consideration can be fair even if it is less than the value of the transferred property, so long as it is an amount that is "'not disproportionately small as compared to the value of the property [transferred].'" In re Borriello, 329 B.R. at 374, quoting In re Churchill Mortgage Inv. Corp., 256 B.R 664, 677-78 (Bankr. S.D.N.Y. 2000), aff'd, 264 B.R. 303 (S.D.N.Y. 2001). "Whether fair consideration has been given in any circumstance is fact-driven, and not subject to any mathematical formula." In re Actrade Financial Technologies Ltd., 337 B.R. 791, 803 (Bankr. S.D.N.Y. 2005), citing United States v. McCombs, 30 F.3d 310, 326 (2d Cir. 1994).

1. The Defendant Roger Corbin Provided Consideration For The Transfers

Here, the trustee has argued that the debtor did not receive fair consideration from the defendant Roger Corbin for Transfers I and II. With regard to Transfer I, he noted that the defendant Roger Corbin did not pay any money to the debtor for the transfer of one per cent

---

[6] In In re Bennett. Funding Group, Inc., the Second Circuit Bankruptcy Appellate Panel concluded that for constructively fraudulent transfer causes of action ... "it is only good faith of the transferee that is to be considered." 2000 WL 33711450, at *5 (2d. Cir. BAP 2000). See also, In re Brosnahan, 324 B.R. 199, 206-7 (Bankr. W.D.N.Y. 2005).

10

of the debtor's interest in the Property. Tr. at 37, 82 and 83. With regard to Transfer II, the trustee argued that the total consideration for the transfer of $182,468.60 - which consisted of the satisfaction of the debtor's mortgage obligation to Chase Mortgage in the sum of $165,668.60 (Tr. at 37-39, 74; Ex. 11) and the debtor's receipt of $16,700.00 in cash from the defendant Roger Corbin (Tr. at 38; Ex. 46)[7] - was less than half the appraised value of the Property and thus reflected the absence of fair consideration. Plaintiff's Post Trial Memorandum of Law at 10-11. The trustee further maintained that the defendant Roger Corbin had a "heavier burden" of proof to demonstrate fair consideration since the transfers involved family members. Id. at 9.

This argument relies too heavily upon the impermissible dollar-for-dollar approach in determining the presence of fair consideration. When each transaction is viewed in its entirety, the defendant Roger Corbin contributed $275,008.60 in funds at the transfers and thereafter. See Defendants's Submission at 30-31. When the debtor signed the deed back to the defendant Roger Corbin, the defendant Roger Corbin had satisfied the debt which the debtor owed to Chase Mortgage in the sum of $165,668.60. In addition, the defendant Roger Corbin had given the debtor $16,700.00. Tr. at 73-74; Plaintiff's Post Trial Memorandum of Law at 4; Defendant's Submission at 3. These amounts were in addition to the $16,800.00 which the defendant Roger Corbin had provided to the debtor to close on the Property after the 1999 foreclosure sale. Tr. at 29. In addition, the defendant Roger Corbin paid thousands of dollars for the mortgage payments[8], insurance, property taxes utilities and maintenance through the period

---

[7] The debtor initially testified at trial that he received the sum of $16,500.00 from the defendant Roger Corbin in May 2002. Tr. at 38. He later testified that the defendant Roger Corbin gave him $16,700.00. Tr. at 73. See also Plaintiff's Post Trial Memorandum of Law at 4; Defendant's Submission at 3.

[8] The mortgage payments made between August 1999 and May 2002 totaled at least $75,840.00 (monthly payment of $2,370 x 32 months). Tr. at 108.

from September 1999 to May 2002 when the debtor held bare legal title.  Tr. at  30.    Thus, the defendant Roger Corbin gave the debtor at least $275,008.60[9], which constitutes a fair equivalent to the value of the Property at the time of the transfers.    The defendant Roger Corbin gave  fair consideration for the Property.

"[A]n allegedly fraudulent conveyance must be evaluated in context; '[w]here a transfer is only a step in a general plan, the plan 'must be viewed as a whole with all its composite implications.' ' " Orr v. Kinderhill, 991 F.2d 31, 35 (2d Cir. 1993) (citations omitted). See also, HBE Leasing Corp. v. Frank, 48 F.3d 623, 635 (2d Cir. 1995) ("It is well established that transactions may under appropriate circumstances be collapsed and treated as phases of a single transaction for analysis under the UFCA (the New York fraudulent conveyance law))."

The transactions as a whole did not unfairly diminish the debtor's estate.  See e.g., HBE Leasing Corp., 48 F.3d at 635 (the test of a fraudulent conveyance is whether the entire transaction adversely affects the debtor's ability to meet its overall obligations).   The defendant Roger Corbin gave an equivalent value in exchange for the Property and the statutory requirement of good faith was satisfied. See Id. at 636 (good faith is satisfied when the transferee has given equivalent value in exchange for the debtor's property).  See also, Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 249 (2d Cir.1987).  The Court concludes that the trustee has not met his burden to prove that the transfers were made without fair consideration.

2.  The Debtor Was Solvent When The Transfers Occurred

In addition to the absence of "fair consideration," DCL Section 273 requires

---

[9] This figure represents the total of the payments mentioned above ($16,800.00 + $165,668.60 + $16,700.00 + $75,840.00).

the trustee to demonstrate that the debtor was insolvent at the time of the conveyance. DCL Section 271(1) defines insolvency as follows:

> A person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his provable liability on his existing debts as they become absolute and matured.

Section 271 uses the balance sheet test for insolvency. In re Nirvana Restaurant Inc., 337 B.R. 495, 506 (Bankr. S.D.N.Y. 2006). For purposes of this section, a debt "includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." DCL §270.

The trustee alleged that as of May 2002 the debtor's assets totaled approximately $25,827.80 and his liabilities totaled $38,802.89. The trustee computed the debtor's liabilities as a total of the following debts: (1) $6,130.38 to First USA Bank; (2) $368.00 to Household Finance; (3) $4,839 to Discover Bank; (4) $7,763.86 to Citi Platinum; (5) $2,833.44 to HSBC Bank; and (6) $16,867.55 to MBNA. Counsel for the defendant Roger Corbin agreed with the approximate total of assets but argued that the debtor's liabilities totaled $21,935.34; he claimed that since the trustee presented no evidence that the debtor was indebted to MBNA in May 2002, the amount of $16,867.55 allegedly owed to MBNA should not be included in this computation. In addition, the trustee's submission of the debtor's petition of August 2004 listing MBNA as a creditor was inadequate to prove insolvency in May 2002; evidence of insolvency on a date significantly distant in time from the date of the transfer is insufficient to support a finding of insolvency on the date of transfer. See In re Le Café Creme, 244 B.R. at 241. See e.g., In re Strickland, 230 B.R. 276, 283 (Bankr. E.D. Va. 1999) (debtor's insolvency nine months after the alleged transfer is immaterial on the issue of insolvency); In re Kaylor, 196 B.R. 42, 46 (Bankr.

D. Va. 1996), citing Liberty National Bank v. Bear, 265 U.S. 365, 370, 44 S.Ct. 499, 68 L.Ed. 1057 (1924)("the admission by the debtor in his petition that he was insolvent, ... [is] 'a very different thing from insolvency at the time [of the activity at issue]'"); In re Washington Bancorporation, 180 B.R. 330, 333 (Bankr. D.D.C. 1995)(proof of insolvency in August of 1990 was insufficient to demonstrate insolvency in February of 1990); In re Auto-Pak, Inc., 55 B.R. 403, 405 (Bankr. D.D.C. 1985).

The trustee has failed to provide sufficient evidence to establish that the debtor was insolvent in May 2002. The evidence produced at trial established that in May 2002 the debtor owed $21,935.34. See Exhibits 33-38. The debtor testified that these were the only debts he had at that time:

> Q: Outside of the testimony that you gave as to the exhibits, I believe they were 33 through 38, that was the $6,1320.38, the [$]380, [$]368, the [$]4,839.66, the [$]7,763.86, and the [$]2,833.44. Do you remember any other debts that you had?
>
> A: No.

Tr. at 46.

The Court finds that the trustee's reliance upon the debtor's trial testimony to establish that the debtor owed MBNA $16,867.55 in May 2002 and thus was insolvent is misplaced.[10] The trustee elicited this testimony as part of his inquiry concerning the creditors

---

[10] The debtor testified as follows:

> Q: And those are a list of your creditors when you filed bankruptcy, right?
> A: That's correct.
> Q: And you filed bankruptcy in August 2004?
> A: Yes.
> Q: And if you look at the bottom it says MBNA. Do you see that?
> A: Yes.

14

listed on the debtor's schedules, which schedules were filed more than two years after the transfers occurred. In addition, the debtor's testimony appears to the Court to have been more the result of confusion on his part, with the debtor assuming that the trustee was referring to the amount due in August 2004 as opposed to May 2002. The debtor subsequently corrected his testimony when counsel for the defendant Roger Corbin asked him if he had any other debts in May 2002 besides the $21,935.34 listed in the trial exhibits. He answered that he did not. Tr. at 46. The debtor testified that his financial condition was excellent on May 11, 2002 and that he continued to use his credit cards between 2002 and 2004. Tr. at 40, 46 and 50. The trustee introduced no evidence to the contrary. Accordingly, the Court finds that the debtor's assets exceeded his liabilities at the time of the transfers.

> 3. The Debtor Transferred The Property With No Actual Intent Or Belief That He Would Incur Debts Beyond His Ability to Pay Them As They Matured

A transfer of property with the actual intent or belief that a debtor would incur debts beyond his ability to pay is a fraudulent conveyance under DCL Section 275. The trustee has the burden of proof on the issue of the debtor's intent. In re Borriello, 329 B.R. at 379; In re All American Petroleum Corp., 259 B.R. 6, 17 (Bankr. E.D.N.Y. 2001). The requirement of actual intent to incur debts beyond the ability to pay is not often susceptible to direct evidence and must be gleamed from the circumstances surrounding the alleged fraudulent conveyance.

---

> Q: That was your credit card obligation to that bank?
> A: Correct.
> Q: And you believes there was - how much was owed at that point?
> A: $16,867.55.
> Q: And was that the approximate amount that you owed as of May 2002 to that credit card company?
> A: Yes.

Tr. at 41-42.

McCombs, 30 F.3d at 328; In re Borriello, 329 B.R. at 379. These circumstances may include: (1) a lack or inadequacy of consideration; (2) a family, friendship or close associate relationship between the parties; (3) a retention of possession, benefit or use of the property in question; (4) a financial difficulty of the party sought to be charged both before and after the transaction in question; (5) an existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of creditor suits; and (6) a general chronology of the events and transactions under inquiry. In re Borriello, 329 B.R. at 379; Stratton Oakmont, Inc., 234 B.R. at 315-16 (citation omitted).

At trial, the trustee argued that, when taken together, the defendant Roger Corbin's failure to provide adequate consideration, the precarious financial condition of the debtor before and after the transfers, the onset of the debtor's financial difficulties, including the expected loss of his job, the events leading up to the transfers, including the debtor's meeting with a bankruptcy attorney and the family relationship between the debtor and the defendant Roger Corbin established that the debtor believed that he would incur debts beyond his ability to pay them.

However, the evidence at trial showed otherwise. The evidence at trial established that the debtor did not believe that he would incur debts beyond his ability to pay them at the time of the transfers. First, as set forth above, the Court has already determined that the consideration tendered to the debtor was sufficient for the deeding of the Property. Second, the debtor testified without contradiction that his financial condition was "excellent" both at the time of the transfers and two years later in 2004. See Tr. at 40, 46. Third, Schedule I of the debtor's petition reflected that the debtor had been a Cablevision employee for the four years

preceding the bankruptcy filing. Id. at 31. Fourth, contrary to the trustee's allegations that the general chronology of events leading up to the transfers compelled the finding of insolvency, the chronology of events showed an agreement to save the defendant Roger Corbin's home, rather than a scheme to defraud the debtor's creditors.[11] Finally, while the debtor and the defendant Roger Corbin are brothers, their agreement was not evidence of a fraudulent conveyance and was not evidence of a violation of the DCL. The purpose of DCL Section 275, like DCL Section 273, is to prevent the debtor from "reap[ing] all the benefits of the Property without the Property being available for his creditors to attach." In re Borriello, 329 B.R. at 379. Here, the debtor obtained no discernible financial benefit from the Transfers.

    4. The Debtor Transferred the Property With No Actual Intent To Defraud His Creditors

Under DCL Section 276, a transfer may be avoided if it was made with "actual intent ... to hinder, delay or defraud either present or future creditors."[12] In re Cassandra Group, 338 B.R. 583, 598 (Bankr. S.D.N.Y. 2006). To prevail on his claim, the trustee was required to establish by clear and convincing evidence that (1) the debtor transferred the Property with actual intent to hinder, delay or defraud his creditors; and (2) the defendant Roger Corbin had

---

[11] It should be noted that the trustee presented no direct evidence that the debtor met with a bankruptcy attorney before the time of the Transfers. See Ex. 22; Tr. at 34.

[12] New York Debtor and Creditor Law Section 276(1)(a) provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.

DCL § 276 (McKinney 2001).

17

knowledge of the fraud at the time of the transfers. In re Corcoran, 246 B.R. 152, 161 (E.D.N.Y. 2000); ACLI Gov't Securities v. Roades, 653 F.Supp. 1388, 1394 (S.D.N.Y.1987).

Here, the trustee has failed to present evidence which would establish either the presence of actual intent to hinder, delay or defraud creditors or the defendant Roger Corbin's knowledge of the alleged fraud at the time of the transfers. The evidence at trial revealed that the debtor deeded the Property to the defendant Roger Corbin to fulfill a promise assumed years before and not to defraud his creditors. Under the facts and circumstances of this case, the Court finds that the trustee is not entitled to avoid the transfers under the DCL.

**CONCLUSION**

For the reasons set forth above, the Court finds that the defendant Roger Corbin provided fair consideration to the debtor for the transfers and that the transfers occurred at a time when the debtor was solvent. The Court further finds that debtor transferred his interest in the Property with no actual intent to hinder, delay or defraud his creditors. The trustee may not avoid the debtor's transfers of the Property as a fraudulent conveyance.

The Clerk of Court is hereby directed to enter Judgment for the defendants Roger Corbin and Regina Corbin on the Trustee's First, Second and Third Claims for Relief in the Amended Complaint, and thereafter to dismiss this adversary proceeding.

IT IS SO ORDERED.

Dated: Brooklyn, New York
      March 30, 2007

                                        s/DENNIS E. MILTON
                                        United States Bankruptcy Judge